# LEWIS *v.* GLASS.

## (*Nashville.* December 15, 1892.)

1. TENANCY BY THE CURTESY. *Does not attach to wife's leaseholds.*

   The husband's tenancy by the curtesy does not attach to wife's leasehold interests in land. This rule of the common law has not been changed by statute in this State.

   Code construed: §§ 49, 3343, 3351 (M. & V.); § 51 (T. & S.).

2. CODE DEFINITIONS. *Applicable to Code provisions only.*

   The Code definitions of words and phrases are applicable only in the construction of the Code provisions.

   Code construed: § 49 (M. & V.); § 51 (T. & S.).

   Cases cited and distinguished: Kelley *v.* Shultz, 12 Heis., 218; Burr *v.* Graves, 4 Lea, 552.

3. CHANCERY PLEADING AND PRACTICE. *Relief not granted upon averments of answer alone, when.*

   In suits in Chancery affirmative relief will not be granted to the defendant upon the averments of his answer alone, without cross-bill, as to a matter not referred to in the original bill nor falling legitimately within its scope or purpose.

   Cases cited and approved: Bussey *v.* Gant, 10 Hum., 238; Gross *v.* Davis, 87 Tenn., 226.

---

FROM FRANKLIN.

---

Appeal from the Chancery Court of Franklin County. THOMAS M. McCONNELL, Ch.

---
Lewis *v.* Glass.
---

MARKS & BANKS for Lewis.

BRANNAN & LEFEBER for Glass.

LEA, J.    H. L. Lewis, testamentary guardian of
the minor children of Mrs. F. A. Glass, and the
children, by their next friend, Mrs. A. M. Lewis,
their grandmother, filed the bill in this cause against
F. A. Glass, alleging the death of the mother of
the children, Mrs. F. A. Glass; that they were minors,
and had been living with their uncle and grand-
mother for several years in Texas, where their
mother had died; that she made a will giving the
custody and guardianship of the children to H. L.
Lewis, their uncle, and by said will, which was
duly probated in Texas, giving the children her
interest in a house at Sewanee, built by her own
means upon a lot leased by her from the Univer-
sity of the South; that the defendant, F. A. Glass,
was threatening to forcibly take possession of said
house, and to take said children from the custody
and possession of their uncle and grandmother; and
prayed for an injunction, which was issued, enjoin-
ing the defendant from taking possession of the
house, or from assuming control and custody of the
children.

The defendant answered the bill, admitting that
the children were minors, and alleging that he, as
father, was entitled to the possession and care of
the children, and that he was entitled to the dwell-
ing for his life, as tenant by curtesy, admitting

Lewis *v.* Glass.

that his wife leased the land upon which the house was built from the University of the South, and that the house was built by the means of his wife, derived from her father's estate.

Much proof was taken as to the separation of F. A. Glass and his wife, and as to the place of her domicile at the time of her death, and as to whether it was to the interest of the children to remain with their uncle and grandmother, or with their father.

Upon the hearing the Chancellor decreed that he declined to make any order as to the children who were past the age of fourteen years, who had expressed a preference to remain with their grandmother and uncle, but gave the youngest to its grandmother as the most suitable custodian, and decreed that the defendant was entitled to a life estate in the house, as tenant by the curtesy, and gave him a recovery against H. L. Lewis and Mrs. A. M. Lewis for the amount of the rents of the house while in possession of complainants since the death of Mrs. Glass; also for the personal property of Mrs. Glass, rendering a decree for about $1,604.

From so much of the decree as adjudged defendant to be entitled to an estate in the house as tenant by curtesy, and from so much as adjuged the defendant was entitled to recover for the personal property of Mrs. Glass, and for the use and occupation of said house and personal property, the complainants, Mrs. Lewis and H. L. Lewis, have appealed, and assign, among other assignments of

error, first, that the decree adjudging an estate for life in said house, as tenant by curtesy, was erroneous, for the reason that the house was built upon leased ground, and there cannot be an estate by the curtesy in a leasehold. Second, because there could not be a decree for the personal property, or the value of its use, because such a decree would grant affirmative relief under an answer without there being any cross-bill filed.

Both of these assignments of error are well taken. A husband derives his right to the tenancy by curtesy alone from the common law. It is admitted in argument that at common law he had no curtesy in leasehold property, for it was regarded as personal property, and, of course, no such right could inhere in it. There was no seizin of the wife. But the claim to curtesy by defendant is based solely on changes effected by statute in this State.

Section 51 of the Code is relied on as giving the holder of a lease the " seizin " of the common law. That section provides that where, in the Code, the words " real estate," " real property," or " lands " are used, they shall include lands, tenements, and hereditaments, and all rights thereto and interest therein, equitable as well as legal. That section has been construed to make all statutes relating to real estate or lands apply to leaseholds. It has been construed to make an Act protecting the real estate of the wife and its profits from the creditors of the husband cover her

leasehold interest.    12 Heis., 218.    It has been construed to make a mechanics' lien Act, giving a lien for improvements on the land of another, cover a leasehold.    4 Lea, 552.    The § 51 of the Code, defining the meaning of words used in its sections, can have no further effect than to modify the meaning of the words when used in enacted statutes. When the terms real estate and lands are used in statutes protecting the property of married women, or giving mechanics liens, or providing for the descent of property, leaseholds are embraced, for this section so provides.    But there is no section of the Code providing that the husband shall have curtesy in the "land" or "real property" of his wife.    As we have said, the husband derives his right to that tenancy from the common law, which prescribes that before he can enter into that estate, his wife must have been "seized" of the land during coverture.    There is nothing in § 51 to mend the lack of seizin in the wife.

But it is insisted that by § 3343 and § 3351 of the Code (M. & V.), the husband's rights are so enlarged as to give him curtesy in his wife's leasehold.    These sections are based upon Acts of the Legislature, passed subsequent to the adoption of the Code of 1858; and by an examination of said Acts it will most clearly appear that the powers and rights of married women over their estates were greatly enlarged, and the rights and authority of the husband correspondingly decreased, and therefore it was deemed prudent to provide that these

Lewis *v.* Glass.

Acts should not interfere with his right to curtesy. It merely saved out of the operation of the Acts one of the husband's already existing rights. It did not enlarge or increase any rights he had in his wife's estate.

In regard to the second assignment of error, that a decree was rendered in favor of defendant against Mrs. Lewis and H. L. Lewis for the personal property of Mrs. F. A. Glass, without a cross-bill or answer in the nature of a cross-bill, it will appear from the statement of the case that the bill was filed, praying an injunction against the defendant from taking control and possession of the minor children of Mrs. Glass, or of the house upon the leasehold. This was the only relief prayed for in the bill. There was no mention of any personal property therein. The bill was answered, and the only reference as to personal property in the answer is as follows: "Respondent will insist that he will be entitled to all the personal property belonging with said house," describing it. By the decree, he was given the property belonging to the house, damages for the use thereof, and an amount for the value of a horse and carriage, and other personal property. This decree was erroneous.

If a defendant seeks affirmative relief against the complainant, he *must* do so by a cross-bill or answer filed as a cross-bill. Gibson's Chancery Practice, Secs. 665, 666; Daniel's Chancery Practice, 1650; *Bussey* v. *Gant*, 10 Hum., 238; *Gross*

v. *Davis*, 87 Tenn. Rep., 226. It results that so much of the decree as was appealed from, is erroneous. The defendant has no interest in the leasehold of his deceased wife, but the same, by her will, goes to her children; it follows, therefore, that no recovery for the rent or use of the house can be had by the defendant against complainants. Without deciding to whom the personal property belongs, we hold that the decree in regard thereto was erroneous in the present state of the pleadings. The injunction heretofore granted will be made perpetual. The house upon the leased lot having been placed in the possession of a receiver by order of the Court, to be rented out, this cause will be remanded for settlement with said receiver. The defendant will pay the costs of this Court and the Court below, for which let execution issue.